UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEUM SISAVATH, | NO C-06-1413-VRW |
| Petitioner, | ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS |
| v | |
| STATE OF CALIFORNIA, | |
| Respondent. | |

Petitioner Seum Sisavath, a state prisoner incarcerated at the California Substance Abuse Facility in Corcoran, CA, seeks a writ of habeas corpus under 28 USC § 2254. For the reasons set forth below, a writ is DENIED.

I

On October 2, 2002, after a jury trial in Fresno County Superior Court, petitioner was found guilty of five counts of lewd and lascivious acts with a child, two counts of aggravated

sexual assault of a child, one count of possession of a
controlled substance, one count of possession of marijuana, and
one count of simple assault.  The jury also found true
allegations that there was more than one victim, requiring the
imposition of terms of fifteen years to life.  Petitioner was
sentenced to thirty-two years to life on November 7, 2002, and
subsequently appealed.

On May 27, 2004, in a partially published opinion, the
California Court of Appeal affirmed the judgment in part,
reversed it in part and remanded the case to the trial court for
resentencing.  Petitioner was resentenced to thirty-two years to
life on November 10, 2004.  The judgment was affirmed by the
California Court of Appeal on September 8, 2006; petitioner's
petition for review with the California Supreme Court was
summarily denied on December 14, 2005.

Petitioner filed his initial federal court petition
October 13, 2006; on March 12, 2007, he filed his First Amended
Petition.  After respondent moved to dismiss the First Amended
Petition for failure to exhaust, petitioner filed a Second
Amended Petition on March 25, 2008.  Per order filed on April 30,
2008, the court ordered respondent to respond to the Second
Amended Petition.  Respondent has filed an answer addressing the
merits of the petition and petitioner has filed a traverse.


II

The California Court of Appeal summarized the factual
background of this case as follows:

Defendant was an acquaintance of Ly N, the mother of an 8 year old (Victim 1) and a 4 year old (Victim 2). He was introduced to Ly by Ly's ex-husband, who sometimes had defendant care for Victim 1 and Victim 2. Over a period of about five months, from September 2001 to January 2002, defendant visited on several occasions with Victim 1 and Victim 2 at Ly's apartment. He sometimes spent the night in the living room or in the children's bedroom. Occasionally, he took the children away with him.

On January 29, 2002, Victim 2 told her mother that defendant had touched her private parts the night before. When questioned by her mother, Victim 1 made similar statements. Ly called the police. The responding officers took statements from Ly, Victim 1, and Victim 2. When defendant came to the house later that evening, Ly called the officers and they returned and arrested defendant. He had cocaine and marijuana in his pants pockets when he was arrested.

The police investigation revealed evidence of numerous instances of sexual abuse of Victim 1 and Victim 2. Defendant was charged by information with 10 counts of sexual abuse and two counts of narcotics possession.

. . .

Trial evidence included testimony by Victim 1, a videotaped statement by Victim 2, and a police officer's testimony describing statements by Victim 1 and Victim 2. DNA test results were also introduced, showing that defendant's semen was found on a pair of panties on which cells from Victim 1 were also found. Other DNA test results showed that defendant's semen was on a blanket found in the children's bedroom. An expert of Child Sexual Abuse Accommodation Syndrome gave testimony bearing mainly on why a sexually abused child might not immediately report the abuse.

<u>People v Sisavath</u>, 118 Cal App 4th 1396, 1398-1400 (2004)

(Opinion at 2-4).[1]

---

[1]  Because relevant portions of the opinion by the California Court of Appeal were unpublished, this court will refer to the lodged opinion throughout this order. The full opinion was lodged by respondent on July 10, 2007 as Lodged Document 7.

III

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 USC section 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the [p]etitioner is not challenging his underlying state court conviction." White v Lambert, 370 F3d 1002, 1009-10 (9th Cir 2004).  Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 USC section 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 USC § 2254(d).  Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams v Taylor, 529 US 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 USC section

4

2254(d) rests in the holdings (as opposed to the dicta) of the

Supreme Court as of the time of the state court decision.  Id at

412; <u>Clark v Murphy</u>, 331 F3d 1062, 1069 (9th Cir 2003).


                                    IV

        Petitioner seeks federal habeas relief based on two

claims: (1) petitioner's trial counsel was constitutionally

ineffective for failing to object to the filing of different and

additional charges in an amended information; (2) admission of

certain statements at trial violated petitioner's right under the

Sixth Amendment to confront the witnesses against him.


                                    A

        In his first claim for relief, petitioner claims

ineffective assistance of counsel based on his trial counsel's

failure to object to the filing of different and additional

charges in an amended information.

        In order to prevail on a Sixth Amendment

ineffectiveness of counsel claim, petitioner must establish two

things.  First, he must establish that counsel's performance was

deficient, i e, that it fell below an "objective standard of

reasonableness" under prevailing professional norms.  <u>Strickland

v Washington</u>, 466 US 668, 687-88 (1984).  Second, he must

establish that he was prejudiced by counsel's deficient

performance, i e, that "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the

proceeding would have been different."  Id at 694.  A reasonable

probability is a probability sufficient to undermine confidence

1  in the outcome.  Id at 694.

2  Petitioner has the burden of showing that counsel's
3  performance was deficient.  Toomey v Bunnell, 898 F2d 741, 743
4  (9th Cir 1990).  Similarly, he must "affirmatively prove
5  prejudice."  Strickland, 466 US at 693.  Conclusory allegations
6  that counsel was ineffective do not warrant relief.  Jones v
7  Gomez, 66 F3d 199, 205 (9th Cir 1995).

8  The California Court of Appeal, after concluding that
9  petitioner had waived any objection to the amended information,
10  addressed petitioner's ineffective assistance of counsel claim in
11  a reasoned opinion on direct appeal:

12  After an initial filing and dismissal, the People
    filed a complaint on June 27, 2002.  Defendant pleaded
13  not guilty and waived his right to a preliminary
    hearing.  On July 22, 2002, the People filed an
14  information.  The information altered the Penal Code
    sections under which defendant was charged in four of
15  the counts.  Defendant pleaded not guilty to the
    information.  There is no indication in the record that
16  before pleading he lodged any objection to the
    alterations.  The People filed an amended information
17  on September 4, 2002.  The amended information again
    changed the sections under which some counts were
18  charged and added new counts.  Defendant again pleaded
    not guilty.  Again, the record does not reflect any
19  objection to the alterations.  There is also no
    indication that defendant ever waived a preliminary
20  hearing on the new charges.

21  . . .

22  Where, as here, the [initial] preliminary hearing
    has been waived, we have held that the People may not,
23  after the waiver and over objection, amend the
    information to charge a new offense. . . . But where
24  the court erroneously tries a defendant on a charge
    which has not been supported by evidence at a
25  preliminary hearing, and where a preliminary hearing
    has not been waived, the defendant waives the error by
26  failing to object. (*People v Burnett* (1999) 71 Cal App
    4th 151, 179.)  Here, the record discloses no objection
27  by defendant, and defendant does not contend that he
    objected.  We conclude defendant waived the issue.

28

6

1    In his reply brief, defendant contends that if he
2 waived, his waiver was due to the ineffective
 assistance of his trial counsel.  But defendant has not
3 even attempted to sustain his burden under <u>Strickland v
 Washington</u>, supra, 466 US at page 694 of showing a
4 reasonable probability that, but for his counsel's
 purported missteps, "the result of the proceeding would
5 have been different."  What could counsel have achieved
 by objecting to the amendments?  Defendant does not
6 say.  We may suppose that he might have secured a
 preliminary hearing on the added and altered charges,
7 or perhaps could have forced a dismissal and refiling.
 Defendant does not argue, for example, that if he had
8 insisted on a preliminary hearing after the amendments,
 the prosecution would have been unable to support the
9 charges.  We conclude that defendant has not shown
 ineffective assistance of counsel.

10 Opinion at 19-20.

11    Here, too, petitioner fails to demonstrate ineffective

12 assistance of counsel, and cannot show that the state court's

13 reasoned opinion is contrary to, or an unreasonable application

14 of, clearly established United States Supreme Court law.

15 Petitioner also fails to demonstrate that the state court's

16 opinion relied on an unreasonable determination of the facts.

17 Even assuming petitioner could demonstrate that his counsel's

18 actions were deficient, he cannot show that there is a reasonable

19 probability that, but for his counsel's failure to object to the

20 amendment, the result of his proceeding would have been

21 different.  See <u>Strickland</u>, 466 US at 693, 694.

22    Petitioner argues that a timely objection would have

23 prevented the amendment and his trial on the new charges (which

24 included counts 5, 6 and 8), and maintains that "the mere fact

25 that [he] comes before this court still sentenced to life terms

26 for each of the unauthorized charges is sufficient, in and of

27 itself, to satisfy the prejudice prong of <u>Strickland</u>."  Second

28 Amended Petition at 17.  As the Court of Appeal found, however,

1  even had his counsel objected, petitioner would have faced the

2  additional counts after either a preliminary hearing or a

3  dismissal and re-filing of the information.  Additionally,

4  petitioner does not demonstrate that the government would have

5  been unable to support the additional charges had his counsel

6  requested a preliminary hearing for the additional charges.

7          Petitioner has failed to demonstrate that the state

8  court's reasoned opinion was contrary to, or an unreasonable

9  application of, clearly established United States Supreme Court

10  law or an unreasonable determination of the facts.  Therefore,

11  petitioner is not entitled to federal habeas relief on his claim

12  of ineffective assistance of trial counsel.

13

14                                B

15          In his second claim for relief, petitioner argues that

16  the California Court of Appeal erred in finding the Confrontation

17  Clause violations harmless beyond a reasonable doubt as to counts

18  3, 4, 5, 6 and 8.

19          The Confrontation Clause of the Sixth Amendment

20  provides that in criminal cases the accused has the right to "be

21  confronted with witnesses against him."  US Const Amend VI.  The

22  Confrontation Clause applies to all "testimonial" statements.

23  Crawford v Washington, 541 US 36, 50-51 (2004).  "Testimony . . .

24  is typically a solemn declaration or affirmation made for the

25  purpose of establishing or proving some fact."  Id at 51

26  (citations and quotation marks omitted).  The Confrontation

27  Clause applies to all out-of-court testimonial statements offered

28  for the truth of the matter asserted.  See id.  It does not bar

1  the use of testimonial statements for purposes other than

2  establishing the truth of the matter asserted, however.  Id at 59

3  n9.

4          The California Court of Appeal, in a reasoned decision

5  on direct appeal, addressed petitioner's Confrontation Clause

6  claims.  Petitioner argued that certain hearsay statements by

7  Victim 2 violated his right to confrontation under Crawford v

8  Washington, 541 US 36 (2004) and required the reversal of many of

9  the convictions against him.  The Court of Appeal agreed with

10 petitioner as to some counts and reversed, but affirmed other

11 counts under a harmless error analysis.  Because petitioner's

12 claim involves numerous statements and numerous counts against

13 him, this court will quote the Court of Appeal's detailed

14 decision at some length.

15         At trial, the prosecution proffered Victim 2 as a
        witness.  The court conducted a hearing to determine
16      whether she was qualified to testify.  After Victim 2
        failed to respond to most of the questions that she was
17      asked, the court concluded that she was disqualified
        because she could not express herself so as to be
18      understood (Evid Code, § 701, subd (b)) and because she
        was incapable of understanding her duty to tell the
19      truth (Evid Code, § 701, subd (b)).

20         Then the court took up the prosecution's contested
        motion to admit two sets of Victim 2's out-of-court
21      statements pursuant to Evidence Code section 1360.
        They were a statement to Officer Matthew Vincent, one
22      of the officers who responded when Ly called the
        police, and a videotaped interview with a trained
23      interviewer at Fresno County's Multidisciplinary
        Interview Center (MDIC).  The MDIC is a facility
24      specially designed and staffed for interviewing
        children suspected of being victims of abuse.
25
           The court took testimony by Vincent and an
26      investigator from the District Attorney's office who
        attended the MDIC interview.  On the basis of this
27      testimony, the court found sufficient indicia of
        reliability.  It also ruled that Victim 2 was
28      unavailable to testify because of the disqualification

ruling.  Finding that the other requirements of
Evidence Code section 1360 were satisfied, the court
admitted the statements.

In his opening and reply briefs, defendant argued
that hearsay statements by Victim 2 were improperly
admitted at trial under the hearsay exception created
by Evidence Code section 1360.  While this appeal was
pending, the Supreme Court announced its decision in
Crawford v Washington, supra, 124 S Ct 1354.  Crawford
announced a new rule regarding the effect of the
Confrontation Clause on the admission of hearsay
statements in criminal prosecutions.  "[A] new rule for
the conduct of criminal prosecutions is to be applied
retroactively to all cases, state or federal, pending
on direct review or not yet final . . . ." (Griffith v
Kentucky (1987) 479 US 314, 328.)  At our request, the
parties submitted supplemental briefs on the effect of
Crawford on the admissibility of Victim 2's statements.

A.   Effect of Crawford on the admissibility
of Victim 2's statements

In Crawford, the defendant was convicted of
assault with a deadly weapon, partly on the basis of
his wife's out-of-court, tape-recorded statement to
police.  The wife did not testify because the defendant
invoked the spousal privilege.  There was no pre-trial
opportunity for the defendant to cross-examine.  After
finding that the statement bore adequate indicia of
reliability, the trial court admitted it into evidence
based on the hearsay exception for statements against
penal interest, because the wife was arguably a
participant in the crime her statement described.
(Crawford v Washington, supra, 124 SCt at pp 1356-
1358.)

The Supreme Court held that admission of the
statement violated the Confrontation Clause.  Where a
hearsay statement is "testimonial", the Confrontation
Clause bars the prosecution from using it against a
criminal defendant unless the declarant is available to
testify at trial, or the defendant had a previous
opportunity to cross-examine the defendant.  (Crawford
v Washington, supra, 124 SCt at pp 1363-1367.)  The
court held that this is so regardless of whether or not
the statement falls within a state-law hearsay
exception or bears indicia of reliability, overruling
Ohio v Roberts (1980) 448 US 56.  (Crawford, supra, at
pp 1363-1367.)  It considered, without deciding, that
testimonial dying declarations might be an exception to
this bar and stated that they would be the only
exception.  (Id at p 1367, fn 6.)

There is no doubt here that Victim 2 was made unavailable to testify by the disqualification ruling and no contention that defendant had a pre-trial opportunity to cross-examine her.  The important question, therefore, is whether her statements to Officer Vincent and in the MDIC interview were "testimonial."

The Supreme Court declined to define this key term. . . . But it did list "[v]arious formulations" of the class of testimonial statements, [including] . . . "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at later trial,'[citation]."  (Crawford v Washington, supra, 124 S Ct at p 1364.)

The court further stated that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."  (Crawford v Washington, supra, 124 S Ct at p 1374.)  The court used the term "interrogation" in "its colloquial, rather than any technical legal, sense."  It reasoned that the statement at issue in the case was "knowingly given in response to structured police questioning" and consequently "qualifie[d] under any conceivable definition."  (Id at p 1365, fn 4).

It is clear that Victim 2's statement to Officer Vincent was testimonial under Crawford.  This statement was "knowingly given in response to structured police questioning."  The People concede this.

The status of the MDIC interview statement is less obvious.  The People contend that it is not testimonial.  We disagree.  The MDIC interview took place on June 12, 2002.  By that time, the original complaint and information had been filed and a preliminary hearing had been held.  The deputy district attorney who prosecuted the case was present at the interview, along with an investigator from the district attorney's office.  The interview was conducted by a "forensic interview specialist."  Under these circumstances, there is no serious question but that Victim 2's statement was "made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" (Crawford v Washington, supra, 124 S Ct at p 1634.) [footnotes omitted].

The People argue that the statement was not testimonial because the interviewer was "not a government employee"; the MDIC is a "neutral location"; the interview might have been intended for a

therapeutic purpose or related to removal proceedings and not intended for a prosecutorial purpose; the interview was not prior testimony at a preliminary hearing, before a grand jury or at a former trial; and it was not a police interrogation.  They suggest we should either hold that the interview was not testimonial or remand for a finding on the purpose of the interview.

There is no need for a remand on this issue.  None of the People's arguments are persuasive.  The pertinent question is whether an objective observer would reasonably expect the statement to be <u>available</u> for use in a prosecution.  Victim 2's interview took place after a prosecution was initiated, was attended by the prosecutor and the prosecutor's investigator, and was conducted by a person trained in forensic interviewing.  Under these circumstances, it does not matter what the government's actual intent was in setting up the interview, where the interview took place, or who employed the interviewer.  It was eminently reasonable to expect that the interview would be available for use at trial. . . .

We have no occasion here to hold, and do not hold, that the statements made in every MDIC interview are testimonial under <u>Crawford</u>.  We hold only that Victim 2's statements made in the MDIC interview in this case were testimonial.

For these reasons, the admission of Victim 2's statements to Office Vincent and in the MDIC interview violated the Confrontation Clause.  In light of this conclusion, we need not discuss defendant's argument that the statements should have been excluded under Evidence Code section 1360.

        B.    Effect on the convictions of the erroneous admission of Victim 2's statements.

With respect to each count of which defendant was convicted, we must determine whether the error of admitting Victim 2's statements was harmless beyond a reasonable doubt.  This harmless-error standard applies because the admission of Victim 2's statements was a federal constitutional error.  (<u>Chapman v California</u> (1967) 386 US 18, 24; <u>People v Boyett</u> (2002) 29 Cal 4th 381, 428.)  The <u>Chapman</u> standard "'requir[es] the beneficiary of a [federal] constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the [result] obtained.' [Citation.]" (<u>People v Neal</u> (2003) 31 Cal 4th 63, 86.)  "To say that an error did not contribute to the [result] is . . . to find that error unimportant

in relation to everything else the [factfinder]
considered on the issue in question, as revealed in the
record.' [Citation.]" (<u>Ibid</u>.)

We begin with two counts that require little
discussion.  Counts 11 and 12, the drug possession
charges, . . . were supported by a police officer's
testimony that he found apparent marijuana and cocaine
in defendant's pockets when he arrested him and by a
criminalist's testimony that the substances found
tested positive for marijuana and cocaine.  Victim 2's
statements had no bearing on these convictions.  They
are affirmed.

Counts 9 and 10, each charging a lewd act . . .
against Victim 2 between May 1, 2001 and January 27,
2002, also require little discussion.  The only
evidence in the record regarding offenses against
Victim 2 earlier than January 28, 2002 (i e, the night
before defendant's arrest), was Victim 2's description
of them in her out-of-court statements.  Neither Victim
1's statement to Office Vincent nor Victim 1's live
testimony contains evidence of these offenses.  Without
Victim 2's statements, there is no evidence to support
the convictions.  They must be reversed.

Count 1, charging a forcible lewd act . . .
against Victim 1 between November 1, 2001 and January
1, 2002, also must be reversed.  Victim 1 told Officer
Vincent that defendant put his thumb in her vagina
during this time period, and Victim 2's statement at
the MDIC corroborated this.  Without Victim 2's
statement, the conviction on count 1 rests on Victim
1's statement alone.  Although Victim 1's statement
constitutes evidence on the basis of which a reasonable
jury could convict, we cannot say that the erroneous
admission of Victim 2's corroborating statement was
harmless beyond a reasonable doubt.  The record shows
that the jury was sometimes unwilling to convict on the
basis of Victim 1's statement or testimony alone.  The
jury acquitted defendant of count 2, which charged a
second forcible lewd act . . . against Victim 1 between
November 1, 2001 and January 2, 2002.  The evidence of
conduct that would support a second charge . . . during
this time consisted of Victim 1's uncorroborated
statement to Office Vincent that defendant made her rub
his penis with her feet on one occasion, and tried to
make her sit on his penis on another occasion.  This
would have constituted sufficient evidence to support a
conviction, but the jury decided to acquit.  Similarly,
on count 3, the jury acquitted defendant of the charged
offense, assault of Victim 1 with intent to commit rape
(§ 220), and convicted him of the lesser-included
offense of simple assault (§ 240) during the period
between November 1, 2001 and January 1, 2002.  The

evidence in support of the charge is the same as the
evidence in support of count 2.  We might not be able
to say that there was insufficient evidence if the jury
had convicted defendant of the charged offense, but it
chose not to do so.  The jury's action on counts 2 and
3 supports our conclusion that a reasonable doubt
exists as to whether the result on count 1 would have
been different without Victim 2's statements.

On count 3, we affirm defendant's conviction of
the lesser-included offense, simple assault (§ 240).
Victim 2's erroneously admitted statements have no
effect on this conviction.  Assuming Victim 1 and
Victim 2's statements that defendant inserted his thumb
into Victim 1's vagina were the basis of the offense
charged in count 1, the evidence presented in support
of count 3 consisted of Victim 1's statements that
defendant made her touch his penis with her feet and
tried to make her sit on his penis.  The jury found a
simple assault on this basis.  There is no reason to
disturb its verdict.

We affirm the convictions on counts 4, 5, and 6,
respectively, charging aggravated sexual assault based
on forcible penetration . . . ., aggravated sexual
assault based on forcible rape. . . ., and a forcible
lewd act . . . ., all against Victim 1 on the night
before defendant's arrest.  These convictions were
supported by the following items of evidence: Victim
1's statement to Officer Vincent that on that night,
defendant unbuttoned her pants, touched her private
area, and then inserted his thumb into her vagina;
Victim 1's testimony that defendant put his thumb or
finger in her vagina; Victim 1's testimony that
defendant put his penis in her vagina; DNA evidence
showing that defendant's semen was on a pair of Victim
1's underpants on which Victim 1's DNA was also found;
and DNA evidence showing that defendant's semen was on
a blanket found in the children's bedroom.  The support
for these three charges in Victim 2's statements was
limited to her assertion to Officer Vincent that
defendant touched both sisters' private areas on the
night before defendant's arrest.

Victim 1's testimony, Victim 1's statement to
Officer Vincent, and the DNA evidence constitute a very
strong case on counts 4, 5, and 6.  Victim 2's
corroboration of these facts was of slight importance.
There is no reasonable doubt that the result on these
charges would have been the same without Victim 2's
statements.

We reverse the conviction on count 7, aggravated
sexual assault based on forcible penetration . . . .,
against Victim 2 on the night before defendant's

1  arrest.  This conviction was based on Victim 2 and
   Victim 1's statements to Officer Vincent that defendant
2  put his pinky in Victim 2's vagina that night.  Absent
   Victim 2's statement, the conviction would rest on
3  Victim 1's statement alone.  As with count 1, we
   conclude that a reasonable jury could convict on the
4  basis of Victim 1's statement alone, but that the error
   of admitting Victim 2's statement nevertheless was not
5  harmless beyond a reasonable doubt.

6      We affirm the conviction on count 8, which charged
   a forcible lewd act . . . against Victim 2 the night
7  before defendant's arrest.  The evidence supporting
   this charge was Victim 1's statement that defendant
8  tried to kiss Victim 2 with his tongue that night.
   Victim 2's statements did not include this fact, so
9  their erroneous admission does not affect the
   conviction on this count.

10
11     In summary, we affirm the convictions on counts 4,
   5, 6, 8, 11, and 12, and on the lesser-included offense
12 on count 3.  We reverse the convictions on counts 1, 7
   , 9 and 10 because the error of admitting Victim 2's
   statement was not harmless beyond a reasonable doubt
13 with respects to those counts.  We note, finally, that
   the multiple-victim allegation stands only with respect
14 to counts 6 and 8 because section 288, subdivision
   (b)(1), is now defendant's only offense among those
15 enumerated in section 667.61, subdivision c, as to
   which there was more than one victim.

16
17 Opinion at 4-12.

18     The court finds that nothing in the state court's

19 reasoned decision was contrary to, or involved an unreasonable

20 application of, clearly established law as determined by the

21 United States Supreme Court.  See 28 USC § 2254(d).  The court

22 also finds, after reviewing the underlying record, that the state

23 court's decision did not rely on an unreasonable determination of

24 the facts.

25     The United States Supreme Court has held that, when a

26 state court finds a constitutional error harmless under <u>Chapman</u>,

27 a federal court may not grant habeas relief unless the state

28 court "applied harmless-error review in an objectively

unreasonable manner."  *Mitchell v Esparza*, 540 US 12, 18-19

(2003) (citations omitted).  As the lengthy excerpt, *supra*,

makes clear, the state court carefully applied the applicable

Chapman standard, and petitioner cannot demonstrate that the

court's analysis was unreasonable under clearly established

United States Supreme Court law.  Similarly, petitioner cannot

show that the state court's close examination of the trial record

and its discussion of the facts was unreasonable.  The state

court did not summarily decide that the Crawford errors were

harmless.  Rather, it examined each count involving hearsay

statements by Victim 2 under Chapman, reversing all counts where

it found a reasonable doubt that the result might have been

different absent Victim 2's statements and affirming only where

there was substantial corroborating evidence in addition to

Victim 2's statements or where Victim 2's statements were not

relevant to the charge.  Opinion at 4-12.  In those

circumstances, it was not "objectively unreasonable" for the

state court to conclude that the Crawford error was harmless as

to counts 4, 5, 6, 8, 11 and 12 and as to the lesser included

offense on count 3.

         In his attempt to show that he is entitled to relief,

petitioner primarily maintains that the California Court of

Appeal misinterpreted the evidence and wrongly concluded that

certain of his convictions should be affirmed.  Petitioner may

disagree with the state court's analysis of the facts but, as

discussed in detail *supra*, he has not shown that the state

court's factual determinations were unreasonable.  As such, his

argument must fail under AEDPA.

1    Petitioner does make one additional argument not

2  addressed in the state court's reasoned opinion.  Petitioner

3  points out that as to counts 4 and 5, the jury initially could

4  not reach a verdict, (Clerk's Transcript (hereinafter "CT") at

5  111) and was only able to do so after a hearing with the trial

6  judge.  (Reporter's Transcript (hereinafter "RT") at 1020-22,

7  1027).[2]  According to petitioner, "this raises the possibility

8  that the jury may have been substantially influence[d] by the

9  improperly admitted hearsay evidence in determining their

10  verdict. (See US v. Jean-Baptiste) (2d 1999) 166 F.3d 102, 109-

11  110 [error prejudicial where jury was deadlocked until

12  administration of <u>Allen</u> charge and so "might well have declined

13  to convict" in absence of improperly admitted evidence.])"

14  Second Amended Petition at 26-27.

15    It is true that the jurors initially could not reach a

16  verdict on counts 4 and 5.[3]  After a stipulation from both the

17  defense and the prosecution, the trial court held a short hearing

18  in the presence of counsel and petitioner.  The court concluded

19  that "the best course of action would be for you [the jury] to

20  deliberate somewhat more. . . . Of course it's up to you what you

21  want to do with respect to each one of them, but I thought that

22  some of your answers were encouraging enough to think that there

23  might be agreements on some of the counts."  RT at 1027.  The

24

25    [2] The Clerk's Transcript and Reporter's Transcript were filed

26  by respondent on September 12, 2008 as Lodged Documents 1-11.

27    [3] The jury also was initially unable to reach a verdict on
   counts 7 and 10, but those counts were reversed by the state
28  court and are not at issue here.

1  jurors were then dismissed.  The jury reconvened on October 2,
2  2002 at 9:00 am and reached verdicts on all charged counts by
3  11:00 am.  CT at 112.

4          Petitioner's argument, however, must fail.  The case
5  petitioner cites in support of his argument does not deal with
6  Crawford error or hearsay evidence; moreover, it is a direct
7  appeal from a federal conviction in the Second Circuit, and is
8  not persuasive authority under AEDPA.  Petitioner does not cite
9  to, nor is the court aware of, any clearly established United
10 States Supreme Court or Ninth Circuit law dealing directly with
11 an initially deadlocked jury in the context of Crawford error.

12         There is at least one pre-AEDPA Ninth Circuit case
13 addressing the impact of an unconstitutional prosecutorial
14 argument where the jury initially deadlocked on whether death was
15 the appropriate sentence.  In Sandoval v Calderon, 241 F3d 765,
16 779 (2001), the prosecutor improperly invoked religious authority
17 during the penalty phase of a capital murder trial.  Id at 777-
18 778.  The jury found the defendant guilty of capital murder, but
19 initially deadlocked on the sentence.  Id  The jury was initially
20 divided, after three days of deliberation, 6-6 on two counts and
21 7-5 on the other two.  Id  After returning to deliberations, they
22 returned four unanimous verdicts.  Id

23         The Ninth Circuit held that, under those circumstances,
24 the prosecutor's error was prejudicial and that the death
25 sentence must be overturned.  The court found that given the
26 lengthy deliberations, the initial nearly-even deadlocks on all
27 counts, and the substantial mitigating evidence, it had "grave
28 doubts" about the harmlessness of the error.  Id at 780.

1    Given that it does not address <u>Crawford</u> error, or even

2   hearsay evidence generally, it is not clear that <u>Sandoval</u> is

3   relevant authority, given AEDPA's requirement of "clearly

4   established law."  Nonetheless, assuming it is relevant,

5   petitioner's case is easily distinguishable from <u>Sandoval</u>.  As

6   the Ninth Circuit noted, such cases are "very record-specific."

7   In petitioner's case, the deliberations were not lengthy.  The

8   jurors deliberated part of the day on September 30, 2002.  They

9   reached unanimous verdicts on all but four of the twelve counts.

10   On count 4, they were divided 10-2 and on count 5 they were

11   divided 8-4.  After deliberating for an additional 1.5 hours,

12   they returned unanimous verdicts on all counts.   CT 108-112.

13   All of these facts regarding the jurors' deliberations are in

14   clear contrast to the facts in <u>Sandoval</u>.

15    Furthermore, although the California Court of Appeal

16   did not directly address the issue of the initial deadlock, given

17   its lengthy opinion and close examination of the record, it was

18   no doubt aware of it.  The state court closely examined the

19   evidence supporting convictions on counts 4 and 5, and before

20   concluding that the <u>Crawford</u> error as to these counts was

21   harmless beyond a reasonable doubt, found that the properly

22   admitted evidence, including "Victim 1's testimony, Victim 1's

23   statement to Officer Vincent, and the DNA evidence[,]

24   constitute[s] a very strong case on counts 4 [and] 5."  Opinion

25   at 11.  Moreover, it concluded that Victim 2's testimony was "of

26   slight importance."  Id

27    This court may not overturn the state court's

28   conclusion unless the state court "applied harmless-error review

1   in an objectively unreasonable manner."  Mitchell v Esparza, 540
2   US 12, 18-19 (2003) (citations omitted).  Having reviewed the
3   state court's opinion, as well as the underlying record and the
4   applicable caselaw, this court finds no support for petitioner's
5   allegation that the state court's conclusions were "objectively
6   unreasonable."

7           Finally, petitioner cannot demonstrate that the alleged
8   constitutional error in his case resulted in "actual prejudice"
9   to him.  Even if a petitioner meets the requirements of section
10  2254(d), habeas relief is warranted only if the constitutional
11  error at issue had a substantial and injurious effect or
12  influence in determining the jury's verdict.  Brecht v
13  Abrahamson, 507 US 619, 638 (1993).  Under this standard,
14  petitioners "may obtain plenary review of their constitutional
15  claims, but they are not entitled to habeas relief based on trial
16  error unless they can establish that it resulted in 'actual
17  prejudice.'"  Brecht, 507 US at 637, citing United States v Lane,
18  474 US 438, 439 (1986).  The United States Supreme Court has held
19  that, even when a state court has found constitutional error and
20  addressed it under the Chapman standard, a federal habeas court
21  should apply the "more forgiving" substantial and injurious
22  effect standard announced in Brecht.  Fry v Pliler, 551 US 112,
23  127 SCt 2321, 2325-2328 (2007) (confirming that the Brecht
24  standard is "more forgiving" of trial errors than the Chapman
25  standard).

26          As discussed in detail supra, the California Court of
27  Appeal closely analyzed the Crawford error and found that it was
28  harmless beyond a reasonable doubt as to counts  4, 5, 6, 8, 11

and 12 and as to the lesser included offense on count 3.
Petitioner has not demonstrated that the state court's harmless
error decision was contrary to, or an unreasonable application of
clearly established federal law, nor has he demonstrated that it
was based on an unreasonable determination of the facts.  28 USC
§ 2254(d).  Given that the standard to be applied on collateral
review is "more forgiving" of trial error than the <u>Chapman</u>
standard reasonably applied by the California Court of Appeal,
petitioner cannot demonstrate "actual prejudice."  He is not,
therefore, entitled to federal habeas relief on this claim.

V

For the reasons set forth above, the petition for a
writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent
and close the file.

IT IS SO ORDERED.


_____
Vaughn R Walker
United States District Chief Judge